HEARD APRIL TERM, 1871.

## DONALDSON vs. JOHNSON.

On March 13, 1869, the State passed an Act to place the insolvent banks of the State in
liquidation, and authorized the Circuit Judges to appoint Receivers of their assets;
and on February 17, 1870, a Receiver was appointed under the Act for the Bank of
Camden. After the passage of the Act, and before the appointment of the Receiver,
the President and Directors of the Bank filed a bill to wind up the affairs of the
bank "according to the course they had been pursuing," and obtained orders call-
ing in creditors to present statements of their "claims at the banking house of
plaintiffs," and directing their payment "out of the assets of the bank, the Presi-
dent and Cashier acting as Receivers to this end, with such further authority as
the Board may rightfully confer as to collections, sales of property," &c.: *Held*, that
the power of the Circuit Judge to appoint a Receiver, under the Act, was not su-
perseded by the proceedings under the bill, and that the Receiver was entitled to
the possession of the assets of the bank.

BEFORE MELTON, J., AT CAMDEN, MARCH TERM, 1871.

This was an action by R. J. Donaldson, as Receiver of the Bank
of Camden, S. C., plaintiff, against William E. Johnson and Wm.
D. McDowall, defendants. The case will be understood from the
decree of the Circuit Judge, which is as follows:

MELTON, J. The plaintiff in this cause was, on the 17th day of
February, 1870, appointed the Receiver of the Bank of Camden,
South Carolina, pursuant to the provisions of an Act of the General
Assembly, approved March 13, 1869, entitled "An Act to enable
the banks of the State to renew business, or to place them in liqui-
dation," (14 Stat., 212,) and became vested, by the terms of the said

Act, with power and authority "to take charge of the property and assets of the bank, and to make a final settlement of the accounts of the bank." On the 8th of March, 1870, he made demand of the defendants, who were the former President and Cashier of the bank, for the delivery to him of the property and assets of the bank. With this demand the defendants refused to comply, and this complaint is filed by the plaintiff, and prays relief: 1st. That the defendants do discover all and singular the assets of the bank. 2d. That they surrender and deliver to the plaintiff all and singular the said property and assets. 3d. That they account for and pay over to the plaintiff all moneys by them received from the collection, sales or other disposition of the property of the bank. 4th. And that the defendants be enjoined from any further dealing with, or interfering with, the property or assets of the bank.

The defendants allege, in answer to this complaint, that at the time the plaintiff was appointed as Receiver, the Bank of Camden was in liquidation, and that they were themselves the Receivers, having been so appointed by the Circuit Court, and that, as Receivers, they were rightfully in possession of the property and assets of the bank.

The facts in relation to this defence are these: On the 17th of April, 1869, a bill was filed in the Circuit Court for Kershaw, by William E. Johnson and others, the President and Directors of the Bank of Camden, S. C., against the Bank of Camden, S. C., and others, being the stockholders and creditors of the bank, which was, in effect, a bill to marshal the assets of the bank, to call in the creditors thereof, and to enjoin them from otherwise proceeding against the bank. By an order in the cause, dated May 14th, 1869, the complainants were required by public advertisement for three months, in newspapers of Charleston, Columbia, New York and Camden, to call upon all creditors to present and establish their demands at the banking house of complainants, in Camden, on or before the first day of September, 1869.

On the 22d day of September, 1869, a report was filed in said cause by the defendants, as President and Cashier, in reference to the condition of the bank and the claims presented; upon the hearing of which the following order was made by his Honor Judge Boozer, then presiding:

"Upon hearing the report of the President and Cashier of the Bank of Camden, S. C., filed in this cause, it is ordered that the claims presented against the said Bank of Camden, on or before the

first day of September, instant, in accordance with the order heretofore made, be paid out of any of the assets of said bank, the President and Cashier acting as Receivers to this end, with such further authority, as the Board of Directors may rightfully confer as to collections, sales of property, and-so-forth, as may be necessary. It is further ordered that the said Receivers proceed to the final settlement of the Bank of Camden, S. C., and that they report to every term of this Court their actings and doings under this order until discharged by the further order of this Court. That, after paying the claims already rendered against the bank, and any others which, coming in hereafter, may be ordered to be paid by this Court, the said Receivers distribute the remaining assets among the stockholders of said bank *pro rata*. That, until discharged, the said Receivers shall be entitled to receive the compensation now allowed them by the Board of Directors of said bank. That the cost of these proceedings be paid by said Receivers."

By the terms of this order, the defendants claim that they were appointed the receivers of the said bank. They, however, gave no bonds as such. And it further appears that, on the first of November, 1869, they made to the Comptroller General a statement of the property, assets and liabilities of the bank, in which they say, " we are the officers of the said bank which we claim to be," and sign their names as President and Cashier. (See the report of the Comptroller General to the General Assembly, November, 1869, pages 124 and 125.)

On the other hand, it appears that at date of December 1, 1869, the President communicated to the Comptroller General that the bank was in process of liquidation under the directions of the Court, and that the assets were then in the hands of the defendants as Receivers of the Court.

Taking the view which I do of the force and effect of the provisions of the Act of 1869, it is unnecessary for me to adjudge whether the defendants were, in fact, the appointed Receivers of the Court, for I should hold, even if this fact were unquestioned, that this appointment could operate only provisionally, and must yield to the subsequent appointment of the plaintiff, which was made in accordance with the provisions of that Act. It is avowed in the complaint, and not denied in the answer, that the Bank of Camden was, by reason of its condition, within the operation of the Act of 1869, that is to say, that it was a bank incorporated by the authority of the State; that by said authority it had failed to comply with its

corporate privileges by refusing to pay its bills; that at the time of the passage of the said Act, it was failing so to do; and that it continued to violate its charter until the first of December, 1869. It is further averred, and not denied, that the appointment of the plaintiff as Receiver was duly made, in accordance with the provisions of said Act, and that he filed his bond with good and sufficient security, which was approved by the Judge.

In making this appointment, the duty imposed upon the Circuit Judge was, in terms, imperative. The necessary facts being shown to exist, the only discretion with which he was invested was as to the selection of the person upon whom to confer the appointment. If this discretion were now to be exercised, with my present knowledge of what had been already ordered by the Court, I would hesitate to supersede, by a new appointment, those who had already been charged with the duty of making a final settlement of the affairs of the bank, or if it were in my power to reconsider my action, I would feel bound to give the most respectful consideration to the protest of the stockholders and creditors against their removal, which are filed with the answer. But the appointment has been made, and were it now manifestly an improper one, it is not in my power to reconsider it. The order by which it was made was not a judicial act. The power to make it might as well have been conferred upon the Governor or upon the Comptroller General, as upon the Judge of the Circuit. Having been made, it is now beyond his control, and must carry with it the full force and authority confirmed by the Acts of the General Assembly, the authority " to take charge of the property and assets of the bank."

It is, therefore, adjudged,

1. That the defendants do discover all and singular the property and assets of the Bank of Camden, South Carolina, which were in their possession at the time the demand therefor was made by the plaintiff, and that they forthwith file with the Clerk of the Court, a schedule thereof.

2. That the said defendants do surrender and deliver over to the plaintiff all and singular such property and assets as are now in their possession.

3. That the said defendants do account for and pay over to the plaintiff all moneys by them, or either of them, collected, on any of the choses in action of said bank since said demand was made, or realized from any sale or other disposition of any of the property and assets of said bank since said demand.

4. That the said defendants, and each of them, be enjoined from any further collections of the choses in action of said bank, and from further dealing or interference with the property and assets thereof.

5. And that the defendants pay the costs of this action.

The defendants appealed.

*Kershaw, Shannon,* for appellants :

1st. Was the Bank of Camden in such a condition as that the Act of 1869 applied to it?

Defendants will argue that it was not, being in liquidation under the decree of the Court having power and jurisdiction to close the bank and distribute the assets.

"The capital stock of an incorporated bank is deemed a trust fund for all the debts of the corporation; and no stockholder can entitle himself to any dividend or share of such capital stock, until all the debts are paid. And if the capital stock should be divided, leaving any debts unpaid, every stockholder, receiving his share of the capital stock, would, in equity, be held liable *pro rata* to contribute to the discharge of such debts out of the fund in his own hands. This, however, is a remedy which can be obtained in equity only; for a Court of common law is incapable of administering any just relief, since it has no power of bringing all the proper parties before the Court, or of ascertaining the full amounts of the debts, &c."—2 Story Eq., § 1253.

" It is not easy, in a great variety of cases, to say what the precise duty of a trustee is; and, therefore, it often becomes indispensable for him, before he acts, to seek the aid and direction of a Court of Equity.—*Ib.*, § 1267.

" It is incumbent upon a trustee to satisfy himself, beyond doubt, before he parts with the possession of the property, who are the parties legally entitled to it."—Lewin on Trustees, 365.

" A trustee cannot be expected to incur the least risk, and, therefore, if all the equities be not perfectly clear, he should decline to act without the sanction of the Court, and he will be allowed all costs and expenses incurred by him for that purpose,    *    *    *. The proceeding may be instituted either by the trustees or the *cestui que trust.*"—*Ib.*, 367, 368.

" The executors of an insolvent estate may, when the creditors are numerous, file a bill against the creditors to enjoin them from

proceeding at law, and to have the estate administered in equity, making the heirs and devisees defendants. This upon the familiar ground of preventing a multiplicity of suits, and thus to save unnecessary expenses and costs. The case stands as that of a trustee in possession of funds upon which numerous parties have conflicting claims, and who calls them together to interplead and to determine their claims among themselves, being ready himself to disburse the fund according to the result. It has been the established practice among us, as is well known to every member of the profession, and is too wholesome to be abrogated."—*Thompson* vs. *Palmer*, 2 Rich. Eq., 32.

2d. Was the plaintiff properly appointed, as to the mode of appointment?

Defendants will argue in the negative—that, in accordance with the practice of the Courts of Chancery, the appointment should have been after notice to the parties in interest, and after an inquiry as to competency and fitness.

" A Receiver will not be appointed over the possession of another Receiver."—*Valley* vs. *O'Reilly*, 1 Hogan, 199; 3 Ch. Eq. Dig., 2476, § 1.

" A Receiver is appointed for the benefit of all parties interested, and will not, therefore, be discharged merely on the application of the party at whose instance he was appointed."—*Bainbraidge* vs. *Blair*, 3 Beav., 421, 3 Ch. Eq. Dig., Tit., " Receiver," 2499.

" It is a maxim that equality is equity. The appointment of a Receiver is, therefore, made for the benefit and on behalf of all parties in interest."—Bouviers Inst., Vol. IV, No. 3803, 140.

3d. That the Circuit Judge ought to have admitted inquiry into the character and competency of the plaintiff at the hearing below, and improperly excluded the testimony proposing to show to the Court his incompetency and bad character.

" In trials of fact, without the aid of a jury, the question of the admissibility of evidence, strictly speaking, can seldom be raised; since, whatever be the ground of objection, the evidence objected to must, of necessity, be read or heard by the Judge, in order to determine its character and value."—1 Green. Ev., § 49, 65.

" Another rule is, that the evidence must be applied to the particular fact in dispute, and, therefore, no evidence not relating to the issue, or in some manner connected with it, can be given, nor can the character of either party, unless put in issue by the very proceeding itself, be called in question, &c."—Peake's Ev., 4, 5.

" The character of either party, unless directly put in issue by the very proceeding itself, can never be called in question."—Swift's Ev., § 4, Chap. 3, 140.

" In civil proceedings, unless the character of a party be put directly in issue, by the nature of the proceeding, evidence of his character is not, in general, admissible."—2 Starkie Ev., 366.

4th. That the plaintiff being, at the time, a member of the Legislature, and United States Revenue Collector, ought not to have been appointed Receiver, and ought not now to be admitted to possession of the fund."—*Wynn* vs. *Lord Newborough,* 15 Ves., 283.

" From the principle involved in the English case of *Attorney General* vs. *Day*, 2 Madd. Ch. R., 246, where it was decided that a Receiver-General of a County could not be a Receiver in a cause, it is believed that no officer of the United States, who has given bond for the performance of his office, and whose property, in case of malfeasance, could be swept from under him (by the United States having a preference) would be a fit subject for the situation of Receiver."—Edwards on Receivers, 64.

5. That it is not competent for the Legislature to take private property, duly placed in lawful custody, out of the hands of the proper custodians.

"A retroactive statute would partake in its character of the mischiefs of an *ex post facto* law, as to all cases of crimes and penalties; and in every other case relating to contracts or property, it would be against every sound principle. It would come within the reach of the doctrine, that a statute is not to have a retrospective effect; and which doctrine was very much discussed in the case of *Dash* vs. *Van Kleeck* (7 Johns. Rep., 477) and shown to be founded not only in English law but on the principles of general jurisprudence. A retrospective statute, affecting and changing vested rights, is very generally considered, in this country, as founded on unconstitutional principles, and consequently inoperative and void."—1 Kent's Com., 507, et seq.

" It is a principle of universal jurisprudence, that laws, civil or criminal, must be prospective, and cannot have a retroactive effect. And an Act of the Legislature is not to be construed to operate retrospectively, so as to take away a vested right."—Per Kent, C. J., *Dash* vs. *Van Kleeck*, 7 John., 477; *Vide* 3 Dall, 371, 397, 2 Gallis, 139; U. S. Dig., Vol. I, Tit. Constitutional Law, § 3, § 82, 557.

6. That the mode of appointment of defendants was perfectly proper.

"The appointment of a person as Receiver to act under the direction of another person who understands the business, is proper." *Lupton* vs. *Stephenson*, 11 Irish Eq. Rep., 484.

" Upon a voluntary dissolution of a corporation, any of its officers or stockholders may be appointed receivers, if not otherwise disqualified." —Am. Ch. Dig., Tit. Receiver, Div. 1, § 30, 292.

"Courts of Equity exercise a sound discretion in the appointment of a Receiver. This is made upon principles of justice, for the benefit of all parties concerned."

As this power is discretionary, it is not easy to point out its limits, or how far it will be exercised. The object of the Court, in making the appointment, is to secure the property for its appropriate uses and ends, and to preserve it from being dissipated when it is in danger of being converted to other purposes, or diminished or lost. In cases of this kind, it will take the fund into its own hands, or secure its due management by its own officers."—Bouviers Inst., Vol. IV, No. 3803, 144, et seq.

"In the matter of the Bowery Bank, where one of its officers had been appointed to wind up its business, * * * an application was made to have the Receiver set aside. *Roosevelt*, J.: "It may be that the selection of one of its own officers as Receiver was injudicious, but it certainly was not unlawful. The Act for the voluntary dissolution of corporations (2 R. S., 467) expressly provides that any of the directors, trustees or other officers, or any of the stockholders, may be appointed Receivers." We have the sanction, therefore, of the Legislature for the *principle* of such a selection. Any creditor, nevertheless, upon good cause shown, may object either before or after the appointment, and may designate a more suitable person, of his own nomination, to take the place of the nominee of the bank.—Edwards on Receivers, Appendix, 714, 715.

*Chamberlain*, Attorney General, contra.

March 8, 1872. The opinion of the Court was delivered by

MOSES, C. J. We do not propose to extend our enquiry beyond what we conceive to be the material question submitted by the brief for our judgment. If "the Judge of the Circuit" had the power to confer the appointment, it must stand, without regard to the consequences which the appellants anticipate will materially affect the interests of the creditors, and possibly the stockholders, of the corporation which they claim to represent.

The Act of March 13, 1869, (14 Stat., 212,) was to change the anomalous relation in which the incorporated banks of the State, which had failed to meet their issue, stood to the source from which they had derived their existence, and to the public, who had become their creditors by holding their bills. It was due to the community with which they had dealt, if they were unable to comply with the conditions intended, and provided as a security for the proper fulfillment of the duties enjoined by their charters, that their corporate rights should terminate. The Legislature, with a commendable liberality, extended the time for their resumption of specie payment to the first of December following the passage of the Act, and in the event of the failure of any bank to accept the proposed alternative, the performance of which was to exempt it from the operation of the Act, the Judge of the Circuit in which such bank was situated, was required to appoint a suitable person as Receiver, to take charge of its property and assets.

We are not now to determine whether the mere fact of such appointment worked a forfeiture of the charter of such non-complying bank, nor whether, without resistance on the part of such bank, according to the forms of law, a forfeiture would follow, nor whether the appellants here can contest the fact of forfeiture, when, in their answer, they do not claim that their bank, on the first of December, 1869, had performed all the conditions demanded by the Act to give continuance to its charter. The objection to the exercise of the power by the Judge of the Circuit, urged by the appellants, rests entirely on the assumption " that the Act of 1869 did not apply to a bank in liquidation under a decree of the Court before the time at which the Act was operative by its terms." The other points made are only incidental to this, as, for instance, that the power of the Judge was entirely superseded by the previous appointment of a Receiver in the cause pending in the Court.

The whole design of the Act could have been readily defeated by all the banks on which it was intended to operate if this exception can prevail. If a bill had been filed after the passage of the Act by any of the suspended banks, admitting its insolvency and the violation of its charter, and praying that it might be put in liquidation and a Receiver appointed, it is not clear that a proceeding set in motion by such defaulting bank to sever itself from the power of the Judge of the Circuit in the particular conferred by the Act, would have proved a successful result. The Receiver to be appointed under the Act had prescribed duties to perform in regard

to the State, which would not be incumbent on a Receiver appointed by a Court in the course of a case, unless required by its order. The appellants, however, so far from seeking, by their bill, the appointment of a Receiver, ask that the President and Directors be protected in the management of the institution "according to the course they have been pursuing, except it be by the order and direction of this honorable Court."

A Receiver is usually appointed on the application of a party having a claim "in some case of equitable property." It is never sought of a Court by a debtor having his own assets in his own hands. He generally considers himself perfectly competent for the management of his property, and the best judge of how it shall be apportioned among his creditors. The bank, already the custodian of its funds, would gain nothing by its application to the Court to allow it to be the possessors of its own property.

The administration of the affairs of this bank was never assumed by the Court. It in no way undertook to vary or transfer the possession of the assets, or to change the relation in which its Directors stood to the bank or to the public.

An order had been made in the cause, requiring the "creditors of the bank to present statements of their claims, designating the number of their bills or notes of each denomination, at the banking house of plaintiffs," by a certain day. The President and Cashier made a report of the demands filed, on which the Court ordered their payment "out of the assets of the said bank, the President and Cashier acting as Receivers to this end, with such further authority as the Board may rightfully confer, as to collections, sales of property, &c., as may be necessary." This conferred no more authority on the President and Cashier, acting under the Board of Directors, than they had before, nor, on the other hand, did it restrict them in the exercise of any of their rights under the charter. The end to be accomplished by the appointment of a Receiver might be entirely frustrated, if the debtor should be selected as the custodian of the fund through which the creditor was to be paid. The Directors represented the bank. Parties are never proper appointees as Receivers. Where would be the additional security for the assets, if they are nominally taken from the Directors as such, and yet retained in their hands as Receivers? The Court cannot be supposed to have intended such an absurdity.

We are not, however, to be understood as affirming, that if, under the proceedings referred to, a Receiver had been appointed for this

15

corporation by the Court, after the passage of the Act of 1869, the statutory power authorized and required by the said Act would have been destroyed or impaired. The Receiver contemplated by the statute is not the ordinary provisional Receiver, appointed by a Court in the progress of a cause for the benefit of all the parties interested. Although appointed by the Judge of the Circuit, he is not, in a judicial view, the officer of the Court. If the Act had authorized the Governor to appoint the Receiver, it could scarcely be claimed that his nominee would be the officer of the Court, although all the incidents belonging to the position of the ordinary Receiver might attach to the office, and he would be answerable to the order and process of any Court having the right to administer the fund committed to his charge. He is not the creature of the Court in the sense in which the term is applied to the ordinary Receiver.

It is a mistake to suppose that the excercise of the power conferred on the Judge of the Circuit could in any event affect the preference which a creditor might have obtained in the course of legal proceedings in regard to the assets of this corporation, or at all interfere with the vested rights of any creditor. If these are in a condition in which they can be judicially recognized, they must prevail, for they cannot be prejudiced by the mere execution of a power by one having the right to exercise it under statutory authority. As they are beyond the reach of the Legislature itself, they are still further beyond that of their mere agent.

The order affirming the judgment of the Circuit Court, and dismissing the motion, has been heretofore filed.

*Willard*, A. J., and *Wright*, A. J., concurred.